# In the United States Court of Federal Claims

No. 21-1313C
(Filed: February 7, 2022)

```
*************************************
                                    *
DWAINE CARLINO,                     *
                                    *
            Plaintiff,              *     Motion and Cross-Motion for Judgment
                                    *     on the Administrative Record, Military Pay,
      v.                            *     Witness Access
                                    *
THE UNITED STATES,                  *
                                    *
            Defendant.              *
                                    *
*************************************
```

## OPINION AND ORDER

**DAMICH**, Senior Judge

      Before the Court are Plaintiff Dwaine Carlino's ("Carlino's") Motion for Judgment on the Administrative Record ("AR") (ECF No. 10) and Defendant United States Government's ("Government's") Cross-Motion for Judgment on the Administrative Record (ECF No. 11) regarding Carlino's alleged unlawful discharge from the Marine Corps and entitlement to benefits under the Military Pay Act, 37 U.S.C. § 204(a)(1).

      In his Complaint, filed on May 4, 2021, Carlino alleges that he was wrongfully discharged from active duty with an Other Than Honorable ("OTH") characterization of service, and that he was denied his due process rights during his administrative separation hearing before a Board of Inquiry ("BOI") and subsequent separation processing. First, Carlino argues that his due process rights were infringed by the BOI's recognition of a purported "ambush" witness testifying without Carlino having an opportunity for a pre-hearing "talk" as guaranteed under Navy BOI regulations. *See* ECF No. 10 at 18. Second, Carlino argues that the Navy violated his due process rights by allegedly breaking its own regulations and separating him (A) without a properly thorough medical evaluation and (B) while his Disability Evaluation Screening ("DES") was still pending. *See, e.g.*, ECF No. 10 at 13, 20-22. Carlino seeks relief which entails (1) that judgment be entered against the Government for monetary relief in the form of compensatory damages including back pay and military benefits, (2) that his military records be amended so as not to reflect a Navy decision to discharge Carlino on August 28, 2020 (but rather a continuation of service without interruption), (3) that his legal fees and costs in this case be reimbursed, and (4) that he receive other necessary or appropriate relief such as consideration for disability retirement. *See* ECF No. 1.

1

For the reasons set forth below, the Court **GRANTS** Defendant's Cross-Motion for Judgment on the Administrative Record ("AR") and **DENIES** Plaintiff's Motion for the same.

I.  Facts/Background

**A. The Command Investigation Against Carlino and the BOI Proceeding**

Captain Dwaine Carlino served honorably in the Marine Corps for 16 years with an unblemished record before this case – he deployed four times, twice to Afghanistan and twice to Iraq. ECF No. 10 at 4. Carlino originally enlisted in the Marines in 2004, became an officer in 2014, and was promoted several times so as to reach his current rank. ECF No. 10 at 4.

In May 2019, Captain Carlino became involved with the civilian wife ("wife") of another Marine ("husband"), a Staff Sergeant. The husband then formally reported the affair to the Marine Corps. AR 107, 112. The response to the husband's report entailed (A) several Military Protective Orders ("MPO's") barring any contact between Carlino and the wife, or between Carlino and the husband, and (B) a Command Investigation.[1] *See* AR 86-88, 263. However, despite the MPO's and the Command Investigation, Carlino and the wife continued to spend time together. AR 64-65, 122-24, 131.

Carlino consented to an interview for the Command Investigation, in which he denied the affair. *See* AR 111-18, 137, 140, 272-76. But the investigator found that the affair was highly likely, and that Carlino had violated the Uniformed Code of Military Justice ("UCMJ"). *See e.g.*, AR 275. On June 3, the investigator recommended that a Board of Inquiry ("BOI") be convened – the recommendation was endorsed. AR 271, 276. On June 13, Carlino was offered a Non-Judicial Punishment ("NJP"), which would have placed a ceiling on the severity of the punishment he might receive and pre-empt a Court-Martial or BOI proceeding. AR 264; *see also* 10 U.S.C. § 815 (Article 15, UCMJ). However, on June 18, Carlino rejected the NJP and elected for a full proceeding. AR 265.

On November 13, 2019, Carlino was notified that a BOI was being convened to make a recommendation about his status in the Marines. AR 245. Specifically, the BOI reviewed the following charges against Carlino:

  a. Failure to demonstrate qualities of leadership required of an officer of your grade;
  b. Failure to properly discharge duties expected of an officer of your grade and experience;
  c. Commission of a military or civilian offense which could be punished by confinement of six months or more

---

[1] The MPO issued to Carlino forbade him from "speaking with [the wife] and coming within 50 feet of her…." AR 263; *see also* AR 218-19.

AR 245. The BOI was directed to review these allegations with reference to five articles of the UCMJ:

>  (1) UCMJ Article 90: willfully disobeying superior commissioned officer;
>  (2) UCMJ Article 92: failure to obey order or regulation;
>  (3) UCMJ Article 107: false official statement;
>  (4) UCMJ Article 133: conduct unbecoming an officer or a gentleman; and
>  (5) UCMJ Article 134: extramarital sexual contact.

*Id.*

During the Command Investigation and lead-up to the BOI, the wife was unwilling to participate with the proceedings against Carlino, including an unwillingness to cooperate with the Navy's investigation and prosecution. AR 10, 70, 247. However, the night before the BOI, Carlino's counsel was notified at 7PM that the wife had decided to testify the next morning at the BOI scheduled for 8:25AM. *See* ECF No. 10 at 8 (citing AR 10). The next morning, Carlino's counsel was allowed to briefly speak with the wife on the phone. *Id.* Also, the wife was only willing to speak with Carlino's attorney with her husband (also a witness) present. AR 10. After the call, Carlino's attorney did not request a continuance to halt the BOI proceedings.

Later that morning, the wife testified for 24 minutes, describing her relationship (including her sexual relationship) with Carlino. *See* AR 56-75. His counsel did not raise objections to her testifying, or to any of her testimony. *Id.* Asked if she was "conflicted" about testifying, the wife replied, "yes." AR 57. She also stated that she was "struggling with a sense of guilt." AR 57. In the husband's testimony, when he was asked by Carlino's counsel if he had "encouraged his wife to testify," the husband answered, "of course." AR 111. He also stated, "She's the key to all of this. She has to take responsibility for what she has done." AR 94. The husband also explained that in the aftermath of the wife's relations with Carlino, he and his wife had been "very, very, very close to the brink of divorce." AR 105.

Witness testimony before the BOI, including Carlino's, widely substantiated the UCMJ charges. Concerning UCMJ Article 90 (willfully disobeying superior commissioned officer) and UCMJ Article 92 (failure to obey an order or regulation), numerous witnesses – including Carlino – testified that Carlino and the wife had continued to spend time together after the MPO barring contact, violating its terms. *See* AR 64-65, 122-24, 131. Sergeant Major William Pinkerton, who had been briefed on the Command Investigation, testified about how he had witnessed Carlino speaking casually with the wife at the gym (her place of employment) – Pinkerton had then reminded Carlino that his contact with the wife violated the MPO. *See* AR 122-24. Madelyn Rogey, a co-worker of the wife, also testified that Carlino and the wife had continued spending time together despite the MPO. *See* AR 129-31. Carlino admitted on the stand that as a Marine officer subject to an MPO, he shouldered the burden of ceasing communications with the wife even though she sought to stay in contact. AR 213-14. Pressed about breaking the terms of the MPO, Carlino stated that he had not carefully read its text. AR 214. This led to an exchange in which the BOI panel asked Carlino, "As a Marine officer, you sign documents that you don't understand?" AR 219. Carlino replied, "Yes Sir." *Id.*

With respect to UCMJ 107 (false official statement), UCMJ 133 (conduct unbecoming an officer or a gentleman) and UCMJ 134 (extramarital sexual contact), the officer leading the Command Investigation testified that Carlino had "lied" during their interview. *See* AR 111-118; *see also* 271-76. The officer also testified about the extent of the evidence corroborating the affair, and the wife directly testified that her relationship with Carlino had been sexual. *Id.*; *see also* AR 56-75.

The BOI found unanimously that Carlino violated UCMJ Articles 90, 92, 107, 133, and 134, and formally recommended Carlino's separation from the Marine Corps with an OTH discharge. *See* AR 237-39.

### B. Captain Carlino's Medical History

Overlapping these events is Captain Carlino's medical history, corresponding to his four combat deployments and 2007 "endorse[ment]"[2] of a Traumatic Brain Injury ("TBI"). *See* AR 19. In August 2019 – after rejecting the NJP but before the BOI proceeding in January 2020 – Captain Carlino sought medical evaluation for TBI and Post-Traumatic Stress Disorder ("PTSD"). AR 18-19, 259-60. On August 9, 2019, a provider ruled out PTSD, but was unable to make a determination about whether Carlino had suffered a TBI while serving in Iraq. AR 18. The result of this TBI screening was inconclusive. AR 19. On August 27, 2019, the Government submitted a report of Carlino's alleged misconduct to the Marine Corps Commandant, and that Carlino had not been diagnosed with TBI or PTSD. AR 258. Then, on March 27, 2020, *after* the BOI decision in January 2020, a psychologist at Camp Pendleton, Lieutenant Kirk, diagnosed Carlino with PTSD and referred him to DOD's Disability Evaluation System ("DES"). AR 20. However, Lieutenant Kirk also concluded in her report that Carlino was responsible for his actions and that PTSD had not been a factor in his conduct with respect to the affair. AR 20.

### C. Post-BOI, Post-PTSD Diagnosis Procedural History

On March 30, 2020, after the PTSD diagnosis on March 27, Carlino's counsel contested the BOI decision by submitting a letter of deficiency, requesting that he not be separated. AR 9-11. Carlino also submitted a personal statement describing his PTSD diagnosis and requesting that he not be separated from the Marines. AR 12-14. On April 17, 2020, the Commanding General of the Marine Air Ground Task Force Training Command reviewed Carlino's claims of legal deficiency in the BOI proceedings, found them without merit, and endorsed the BOI's decision. AR 7-8.

On July 23, 2020, the Assistant Secretary of the Navy directed Carlino's separation, and finally, on August 28, 2020, Carlino was separated from the Marine Corps with an OTH

---

[2] As reflected in the AR, the word "endorse" is used as a proper term to connote Carlino's 2007 representation that he had suffered a TBI. *See* AR 19.

characterization of service. *See, e.g.,* ECF No. 10 at 9. On May 4, 2021, Carlino filed a Complaint with this Court. ECF No. 1.

## II. Standard of Review

Where the parties have filed cross-motions for judgment on the administrative record, as here, Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") provides a procedure for parties to seek the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Unlike summary judgment standards, genuine issues of material fact do not preclude a judgment on the administrative record. *See id.* at 1355-56. Questions of fact are resolved by reference to the administrative record. *Id.* at 1356.

In reviewing the determinations of a military corrections board, a plaintiff must demonstrate "by cogent and clearly convincing evidence," *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986), that the military board's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). It is well settled that "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (citations omitted). Moreover, "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993).

A court may set aside an agency's decision if the agency "'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). However, "[w]hen substantial evidence supports the board's action, and when that action is reasonable in light of all the evidence presented, the court will not disturb the result." *Pope v. United States*, 16 Cl. Ct. 637, 641 (1989). The court's review "does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig*, 719 F.2d at 1157.

## III. Discussion

### A. Introduction

Carlino makes two sets of due process arguments challenging the BOI's decision. First, Carlino argues that he was prejudiced by the BOI's allowance of an "ambush" witness. *See* ECF No. 10 at 18. Carlino specifically argues that his due process rights were violated because of (1) the relatively late notice about the wife's decision to testify before the BOI and (2) the short

5

duration of his lawyer's preparatory phone exchange with the wife, and the fact that the husband (also scheduled to testify) was present for the call.

Second, Carlino also separately argues that the Navy violated his due process rights by purportedly breaking its own rules and separating him (1) without a properly thorough medical evaluation and (2) while his Disability Evaluation Screening ("DES") was still pending. *See, e.g.*, ECF No. 10 at 13.

Under 10 U.S.C. §1181, the Navy establishes its own procedures for BOI proceedings. Thus, this Court examines Carlino's arguments based on whether the BOI's application of the Navy's rules was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). In the case of Carlino's first argument – due process with respect to pretrial witness notice and availability – the governing Navy regulation is SECNAV Instruction 1920.6D. Carlino's second due process argument – separation despite allegedly incomplete medical status and disability screening – turns on Department of Defense Instruction 1332.18 ("DODI 1332.18") and Marine Corps Order 5800.16 ("MCO 5800.16").

### B. Pretrial Witness Notice and Availability

Carlino alleges that the circumstances of the wife's testimony before the BOI rendered her an "ambush" witness in violation of his due process rights, based on (1) the relatively late notice that the wife would testify and (2) Carlino's counsel's purported inability to hold an adequately preparatory "talk" with the wife before the BOI hearing.

Concerning BOI due process rights in general, SECNAV 1920.6D – US Navy BOI protocol – provides:

> The purpose of a BOI is to give officers a full and impartial hearing at which they may respond to and rebut the allegations which form the basis for separation for cause or retirement in the current grade or a lesser grade and present matters favorable to their case on the issues of separation and, if applicable, characterization of service.

AR 678; SECNAV 1920.6D (July 24, 2019). Specifically concerning due process rights with respect to witnesses, the framework further states:

> [Respondents have the right to be provided with] [t]he names of All Witnesses **in Advance** of BOI Proceedings. Failure to provide any information or the name of a witness cannot preclude the board from considering the information or hearing the witness, provided the respondent has the **opportunity to** examine any statement, or **talk with any witness presented, before consideration by the Board**.

AR 682; *see also* AR 247 (emphasis added).

It is factually undisputed that the wife was refusing to cooperate or testify, and then reversed course the day before the hearing, with Carlino being informed at 7PM, that this took place under the influence of her husband's "encouragement," and that Carlino's counsel was only finally able to speak with the wife in the presence of the husband, for a short period of time on the morning of the BOI proceeding. *See* AR 10, 57, 70, 94, 111.

The Government argues that the notice to Carlino about the wife's decision to testify – the day beforehand – complied with SECNAV 1920.6D because the rule requires such notification "in [a]dvance of BOI proceedings." The Government observes that even if "in advance" is read as generously as possible to Carlino, so that notification the day before the proceeding might raise a problem, this was in fact the point at which the prosecution, too, received notice of the wife's decision to testify. ECF No. 11 at 8. In other words, both sides enjoyed essentially equal durational access to the witness. *Id.* The Government also notes that because military boards have no subpoena power over civilian witnesses (*see Milas v United States*, 42 Fed. Cl. 704, 717-18 (1999)), they had no legal ability to induce the wife's testimony earlier. *See* ECF No. 11 at 8.

With respect to the circumstances of Carlino's lawyer's pretrial witness interview of the wife, the Government argues that SECNAV 1920.6D was followed because Carlino's lawyer did, in fact, "talk" with the witness before the BOI proceeding. *See* ECF No. 11 at 9.

Concerning the timing of the notice to Carlino about the wife's testimony, the Court agrees with the Government that Carlino's allegation of a due process rights violation is not supported by the text of SECNAV 1920.6D. The rule requires that "[t]he names of [a]ll [w]itnesses [should be provided to a respondent] in [a]dvance of BOI [p]roceedings," but that this also "cannot preclude" the BOI from hearing a witness as long as the respondent has "the opportunity to… talk with any witness presented before consideration by the Board." AR 682 (SECNAV 1920.6D). Carlino was informed of the wife's decision to testify the evening before the BOI hearing – i.e., "*in advance*" of the hearing. Carlino presents no caselaw suggesting or demonstrating that notice on the evening before the BOI proceeding runs afoul of "in advance." The Government had no subpoena power over the wife and did not receive notice of the wife's testimony materially in advance of the notice to Carlino. Ultimately, the notice to Carlino that the wife was testifying was relatively short, but it was certainly "in advance," and therefore does not violate the witness notice requirement of SECNAV 1920.6D.[3]

Concerning Carlino's assertion that his due process rights under SECNAV 1920.6D were violated because he and his counsel were not able to hold an adequately extensive preparatory "talk" with the wife, this argument draws scrutiny to construction of the word "talk." SECNAV 1920.6D is silent about who may or may not be present during the pre-trial witness "talk." Neither party offers caselaw defining "talk" with respect to SECNAV 1920.6D, so as to establish the extent of the right of BOI respondents to "talk" to witnesses. Nor has the Court found any such caselaw relating to the definition of "talk." The Court, therefore, looks to dictionary

---

[3] Logic would also dictate that the wife would be a possible witness because her involvement in the events giving rise to the case.

definitions. Webster's Dictionary[4] ascribes "talk" numerous definitions, one of which aligns with a setting such as pre-hearing proceedings: "a formal discussion, negotiation, or exchange of views – often used in [plain language]." Merriam-Webster's Collegiate Dictionary (10th ed. 2001) at 1199.

The SECNAV 1920.6D rule itself expressly states that its "purpose" includes "giv[ing] officers a full and impartial hearing at which they may respond to and rebut … allegations…" *See* AR 678. In other words, this rule is designed to enable respondents to prepare for BOI proceedings, including preparatory exchanges with testifying witnesses. Therefore, on the surface, Carlino's argument – that his lawyer's exchange with the wife on the morning of the BOI misaligns with "talk" as guaranteed by SECNAV 1920.6 – might appear to have some merit.

However, as the Government suggests, Carlino's attorney could very well have asked on the record for a continuance or could have objected to her testimony. The record is clear that she did neither. *See* ECF No. 11 at 8. Rather, it appears to the Court that Carlino's counsel chose instead to emphasize through cross-examination that the wife was "encouraged" to testify by her husband.[5] AR 111.

This Court upholds the BOI's decision because (1) Carlino's due process arguments concerning the wife's testimony do not credibly impugn the BOI proceedings as arbitrary and capricious, and (2) the BOI's decision was supported by substantial evidence even *without* the wife's testimony. The standard of review in this case is baseline "arbitrary and capricious" scrutiny, with the further specification that this Court's assessment "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig*, 719 F.2d at 1157. "Responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and . . . courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Id.* at 1156. Here, the record shows that the BOI's decision was supported by substantial evidence, and that the BOI's substantiation of Carlino's alleged UCMJ violations did not hinge on the wife's testimony[6]: First, the BOI charged Carlino

---

[4] "Talk" is not defined in Black's Law Dictionary.

[5] In closing arguments, Carlino's counsel suggested that the wife's husband "coerced" her into testifying. *See* AR 206.

[6] The BOI's substantiation of the allegations against Carlino likewise did not rest on the husband's testimony. Carlino's argument includes an allegation that the husband's presence at the wife's pre-trial "talk" with Carlino's lawyer prejudiced the *husband's* BOI testimony (since he had foreknowledge of Carlino's BOI questions for the wife). *See* ECF No. 10 at 18-19. The Government argues that this argument was not raised in Carlino's post-BOI filings and therefore cannot be raised before this Court. *See* ECF No. 11 at 10, note 3. This Court holds that the issue has been preserved because Carlino's post-BOI filings raised concerns about the husband's presence when the wife talked with Carlino's lawyer (*see* AR 10). However, the possible contamination of the husband's testimony before the BOI is moot because the Administrative Record indicates that the BOI's allegations against Carlino were substantiated – supported by

with violating UCMJ Article 90 (willfully disobeying superior commissioned officer) and UCMJ Article 92 (failure to obey an order or regulation).  Carlino *himself* and also several other witnesses aside from the wife – Pinkerton and Rogey – testified that Carlino violated the MPO, which was issued by a superior officer.  *See* AR 122-24, 129-31, 184, 263.

Second, the BOI charged Carlino with violating UCMJ 107 (false official statement).  The evidence and testimony considered by the BOI indicated that Carlino made false official statements – this was emphasized by the testimony of the officer who led the Command Investigation (independent of the wife's testimony).  *See* AR 111-18; *see also* AR 271-76.

Third and finally, in addition, the BOI charged Carlino with violating UCMJ Article 133 (conduct unbecoming an officer or a gentleman) and 134 (extramarital sexual contact).  While it is true that the wife's testimony did inculpate Carlino for the affair, the evidence and testimony in the case (again, reflecting the Command Investigation) otherwise strongly indicated that the affair had in fact transpired.  *Id.*  Also, the BOI was well-aware of the possible "coercion" of the wife.[7]

The Court holds that while relatively short, the notice to Carlino that the wife would testify on the evening before the BOI hearing did not violate due process because it was indeed "in advance" of the hearing in compliance with SECNAV 1920.6D.  The Court further holds that because the allegations against Carlino were supported by substantial evidence independent of the wife's testimony (including by Carlino's testimony), the BOI's decision cannot be disturbed by the questionable extent of Carlino's counsel's "talk" with the wife before the BOI proceeding.  This also weighs Carlino's lawyer's decision not to request a continuance or object to the wife testifying, which would have enabled a BOI preliminary ruling on whether further "talk" between Carlino and the wife was necessary or appropriate.

### C.  Carlino's Due Process Rights and His Medical Status

Carlino presents two arguments that his separation from the military violated his due process rights because of his medical status at the time.  First, Carlino argues that given his medical status – including a diagnosis of PTSD – military regulations required further medical evaluation before he could be separated.  Second, Carlino argues that he should not have been separated because he was awaiting DOD Disability Evaluation System ("DES") screening at the time.

#### i.  The Thoroughness of Carlino's Medical Evaluation

---

substantial evidence (the scope of this Court's review) – independently of the testimony of both the wife and her husband.

[7] The BOI heard (A) testimony confirming the wife's "conflicted" feelings about testifying, (B) the husband's confirmation that he pressured his wife to testify, (C) Carlino's allegation that the wife's testimony was colored by ulterior considerations about impending or anticipated divorce and child custody proceedings, and (D) the allegation that the wife was being "coerced" by her husband.  *See* AR 10, 56-75, 94, 105, 111, 197-98, 206.

Concerning the thoroughness of Carlino's medical evaluation relative to his separation, Military Corps Order 5800.15 ("MCO 5800.15") requires:

> **… an officer shall receive a medical evaluation to assess whether the effects of PTSD or TBI constitute matters in extenuation that relate to the basis for administrative separation** if the officer (a) has been previously diagnosed with PTSD or TBI by an appropriately privileged medical provider as described below, or reasonably alleges that PTSD or TBI played a role in the officer's misconduct or substandard performance; (b) was deployed overseas to a contingency operation or was sexually assaulted during the 24 months before the initiation of separation processing, or (c) is being recommended for separation with an Other Than Honorable characterization of service.

MCO 5800.16, v.15, § 010302 (*see also* ECF No.10 – Pl. Appx. at 67) (emphasis added). The MCO further instructs:

> The medical provider who conducts a PTSD or TBI evaluation must specifically comment on the presence or absence of these conditions and, if present, the extent to which they affected the officer's judgment and may have been a contributing factor in the basis for separation.

*Id*. In other words, for separation proceedings, an officer must receive a medical evaluation to assess PTSD and TBI status, and whether these were extenuating circumstances in the conduct for which the officer may be separated. The medical evaluation must include a finding about whether such conditions, if present, impacted the officer's judgment or conduct. Finally, in addition, the MCO also states:

> **For those cases in which an appropriately privileged medical provider determined that PTSD or TBI *may have been a contributing factor*** to one or more of the bases for separation, the [convening authority's endorsement] shall, in light of that identified possible PTSD or TBI contributing factor, explain the reasons for the recommended separation and characterization of service. (emphasis added)

*Id*.

In this case, Carlino was medically evaluated at some length. The evaluations in August 2019, post-dating the events giving rise to these BOI proceedings, ruled out PTSD and were inconclusive insofar as TBI. AR 18-19. In March 2020, following the BOI proceedings and decision in January 2020, Lieutenant Kirk diagnosed Carlino with PTSD, but also found that Carlino had been responsible for his actions – PTSD had not been a factor with respect to the events underlying the Command Investigation and BOI proceeding. AR 20. MCO 5800.16 v.15 triggers a further showing required for recommended separation and characterization of service "for those cases in which an appropriately privileged medical provider determine[s] that PTSD or TBI may have been a contributing factor to one or more bases for separation . . . ." Given Lieutenant Kirk's March 2020 findings, this does not apply to Carlino. Furthermore, the Navy

expressly considered the possibility that Carlino's 2007 TBI endorsement might have impaired his judgment, but reasoned that even if Carlino did endorse a TBI in 2007, his normal capacities were reflected in the fact that he served an additional 12 years in the Marines and rose to the rank of Captain.  *See* AR 8.

Carlino received a thorough medical evaluation, and the Navy followed, rather than transgressed, MCO 5800.16.  The Navy's separation of Carlino relative to the extent of his medical examinations did not violate Carlino's due process rights.

### ii.  Carlino's Pending DES Evaluation at the Time of Separation

On March 27, 2020, Lieutenant Kirk referred Carlino for DOD Disability Evaluation System ("DES") screening (AR 20), but he was separated beforehand.  Carlino argues that his separation while the DES screening was still pending violated his due process rights.

Department of Defense Instruction 1332.18 ("DODI 1332.18") establishes that military service members "pending separation under provisions that authorize a characterization of service under other than honorable conditions" may not be referred for DES screening, except as otherwise provided by military regulations.  DODI 1332.18 (*see* Pl. MJAR Appx. at 32).  This rule makes an exception for DES during a pending separation when such an evaluation "is warranted as a matter of equity or good conscience."  *Id.*

Navy regulations permit DES referrals and screening during pending separation proceedings empowered to issue OTH characterizations of service.  SECNAVINST 1920.6D (*see* AR 694).  However, the same Navy regulations enable "Dual Processing," meaning that an officer may be separated *before* completion of DES screening if the Navy finds that this is warranted.  *Id.*  In other words, the Navy has broad discretion to separate an officer before DES screening is completed.

Thus, in summary, the Navy's rules do not guarantee DES screening for officers facing separation proceedings, and Dual Processing expressly permits such separations.  In the case of Carlino, the Navy exercised this discretion.  As noted above, Lieutenant Kirk – who referred Carlino for DES screening – made an express finding that Carlino was responsible for his actions.  AR 20.  Carlino's medical status was weighed by the BOI when it reached its decision, and Carlino's PTSD diagnosis was weighed by the Navy when it separated Carlino.  *See, e.g.*, 194-95.

Carlino's separation while DES screening was pending does not constitute a deprivation of due process; rather, this was expressly permissible under the Navy's rules.

## IV.    Conclusion

The Court hereby **GRANTS** Defendant's Cross-Motion for Judgment on the Administrative Record and **DENIES** Plaintiff's Motion. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/Edward J. Damich
EDWARD J. DAMICH
Senior Judge
